Atul R. Singh
Honeah Mangione
ELLENOFF GROSSMAN & SCHOLE LLP
1345 Avenue of the Americas, 11th Floor
New York, NY 10105-0302
Tel: (212) 370-1300
Fax: (212) 370-7889
Email: asingh@egsllp.com
        hmangione@egsllp.com

*Attorneys for Plaintiffs*
NERO International Holding Co., Inc. and
Joseph Valenti

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x

NERO International Holding Co., Inc.
and Joseph Valenti,

            *Plaintiffs/Counterclaim Defendants*,

    v.

NEROtix Unlimited Inc.,
Annemarie Tyler,
William J. Bearden d/b/a NERO CENTRAL, and
NERO World, L.L.C.,

            *Defendants/Counterclaim Plaintiffs*.

Case No.: 1:21-cv-11302-PBS

Leave to file granted on June 9, 2022
(ECF No. 45)

------------------------------------------------------------x

## FIRST AMENDED COMPLAINT

Plaintiffs, NERO International Holding Co., Inc. ("NIHC") and Joseph Valenti ("Valenti")
(collectively, "Plaintiffs"), by their undersigned attorneys, bring this First Amended Complaint
against Defendants, NEROtix Unlimited Inc. ("NEROtix") and Annemarie Tyler ("Ms. Tyler")
(collectively, "Defendants"), for damages and injunctive relief, and in support thereof state as
follows:

## NATURE OF THIS ACTION

1.      Plaintiffs brings this action under the Federal Trademark Act, commonly referred to as the Lanham Act, for trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114 *et seq.*; for false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) *et seq.*; for trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) *et seq.*; for fraudulent procurement and maintenance of trademark registration in violation of Section 38 of the Lanham Act; for unlawful registration of domain name in violation of 15 U.S.C. § 1125(d) *et seq.;* 15 U.S.C. § 1120; for copyright infringement in violation of 17 U.S.C. § 501, and breach of contract in violation of the common law of the State of Massachusetts.

## THE PARTIES

2.      Plaintiff NERO International Holding Co., Inc. is a domestic business corporation organized and existing under the laws of the State of New York with a place of business at 219 Freemont Street, Peekskill, New York 10566.

3.      Plaintiff, Joseph Alan Valenti, is an individual and citizen of the United States, residing at 2763 NC Highway, 731 West Mount Gilead, North Carolina 27306.  Joseph Valenti is doing business as NERO Live Game Systems and separately as NERO International Holding Co.

4.      Upon information and belief, Defendant NEROtix Unlimited Inc. is a domestic corporation organized and existing under the laws of the State of Massachusetts with a place of business at 56 Riverside Avenue, Attleboro, Massachusetts 02703.  Defendant AnneMarie Tyler is the president, treasurer, secretary, and director of NEROtix Unlimited, Inc.

5.      Upon information and belief, Defendant AnneMarie Tyler is an individual and citizen of the United States, residing at 56 Riverside Avenue, Attleboro, Massachusetts 02703.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction over this action pursuant to 15 U.S.C. § 1121. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as questions of federal law have been presented under 15 U.S.C. §§ 1114, 1125(a), 1125(c), 1125(d), and 1120; and 17 U.S.C. § 501; and 28 U.S.C. § 1338, as this action concerns trademarks and copyrights.  This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because such state law claims are so related to Plaintiffs' claims under federal law, which are within this Court's original jurisdiction, that such state law claims are part of the same case or controversy.

7.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332, because, upon information and belief, the matter in controversy exceeds the sum of $75,000 and each party is a citizen of a different or foreign state or country.

8.      This Court has personal jurisdiction over Defendant NEROtix in that, upon information and belief, NEROtix, by itself or through its agents, regularly solicits, transacts, and engages in business in Massachusetts; derives substantial revenue from services rendered in Massachusetts; and has caused Plaintiffs' injuries alleged herein from its acts within the State of Massachusetts.

9.      This Court has personal jurisdiction over Defendant Ms. Tyler in that, upon information and belief, Ms. Tyler is domiciled in the State of Massachusetts and has caused Plaintiffs' injuries alleged herein from her acts within the State of Massachusetts.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendant NEROtix regularly conducts business in Massachusetts and in this judicial district and is therefore subject to personal jurisdiction in this district, and/or a

substantial part of the events or omissions giving rise to the claims alleged herein occurred in this judicial district.

## FACTS COMMON TO ALL COUNTS

### *The NERO Business Acquisition*

11.     Live action role playing (LARP) is a dramatic and narrative interactive game where participants act (or perform) through physical action in a physical, albeit imaginary, environment. LARPing is a storytelling system such that the players assume character roles, often wearing the costumes to lend verisimilitude to the game and interact with each other based on the values of their characters and pursue their goals.  The rules of the game dictate the world, characters, and action, thereby defining the universe of the game.

12.     NERO is one system of a LARP game started in 1989 by Ford Ivey (along with his wife Maureen Ivey) under the name NERO International, Inc. ("NERO Int'l").  The game system began within the realm of the Duchy of Ravenholt.  Due to the gaining popularity of the NERO game system, Mr. Ivey desired to expand the NERO world to make it more adventure-oriented. Accordingly, he expanded the NERO world and added territories neighboring Ravenholt that collectively became the Kingdom of Evendarr.

13.     As the game gained popularity, Mr. Ivey allowed participants to open chapters under the NERO name. The first approximately twelve chapters took part in the Kingdom of Evendarr.  The chapters spanned multiple state lines from Massachusetts, New Hampshire, Vermont, Rhode Island, and Connecticut.  The Massachusetts chapter became the flagship chapter and was dubbed Ravenholt.   As such, Mr. Ivey had been using the name RAVENHOLT as part of the NERO game system since approximately 1989.

14.     Mr. Ivey sold the NERO game to Mr. Valenti as president of NIHC on or about August 03, 1998.  The sale of the business was accomplished with formal documents, namely, a bill of sale, transfer of copyright, and assignment of trademarks and copyrights, including the trademark NERO and copyright to the NERO Play Book, 5th Edition.  Among the trademarks transferred to NIHC was U.S. Reg. No. 2270409 for the mark NERO.[1]  Subsequent to the purchase of the game system, Mr. Valenti eventually acquired copyrights in other NERO works (e.g. characters; written texts) from their original authors.

15.     Since acquiring the NERO business, Mr. Valenti has promoted the NERO game through various business ventures such as NERO LIVE ADVENTURE GAMES, NERO, NEW ENGALND ROLEPLAYING ORGANIZATION, and NERO Game Systems.  Mr. Valenti is the sole owner and/or president of these ventures.

16.     Since 1998, Valenti has actively maintained his NERO website located at NEROLARP.com, which is utilized as a promotional vehicle and as a means of keeping his community and fans updated about NERO news, events, local and nationwide chapter information, and as a forum for members to talk and engage with one another.

17.     Valenti also operates and controls NERO LARP on Facebook, which has been active since on or about January 1, 2008.

18.     Valenti also acquired and retains copyright ownership in various works created for the game system, including the NERO Play Book, which is currently, in its 9th Edition (see **Exhibit A**), character race packets (see **Exhibit J**), and maps (see **Exhibit K**).

19.     Over the course of 19 years, Mr. Valenti has developed a substantial client and fan base.  As a result, NERO has become well-known in the United States and abroad.  Overall,

---

[1] While the registration is currently cancelled, Plaintiffs continue to use the mark and have not ceased use of the mark.

the NERO game system includes over 5,000 members, 31 NERO Chapters in various U.S. states, 2 NERO Chapters in Canada, and 1 NERO Chapter in South Africa.

### The NERO Business

20.     In its current version, the NERO game system takes place in the imaginary World of Tyrra.  As part of the World of Tyrra, there are 90 realms players can choose from and/or associate with.  The Nero game system is comprised of long-term plotlines that can extend over various events, which can occur in small or large gatherings operated by one or more chapters.

21.     After Mr. Valenti's purchase of the NERO game system, Mr. Valenti continued Mr. Ivey's tradition of offering franchise opportunities to chapter holders.  Chapter holders typically created a business structure such as a corporation or limited liability company, and the business entities were then conveyed limited rights to the NERO intellectual property through a NERO Licensing and Offering Agreement.

22.     Each realm is owned by Mr. Valenti and all realms utilize NERO's intellectual property, including trademarks and copyrights.  Nonetheless, each chapter is individually owned and operated.

### Ravenholt

23.     The Duchy of Ravenltolt (aka Ravenholt) is part of the Kingdom of Evendarr on the continent of Avalon, on the planet of Tyrra.

24.     Ravenholt was the first in-the-game land created by Mr. Ivey.  All events produced by Mr. Ivey took place in Ravenholt.

25.     When Mr. Valenti purchased the NERO game from Mr. Ivey, this purchase included all NERO storylines, including Ravenholt.

26.     The Ravenholt story was included in the NERO Rule Book, Edition 2 and Edition 3.  At some point between 1993 – 1994, the Ravenholt story was transferred to its own book, the Nero Players Guide.

27.     It is not uncommon for players and non-chapter owners to develop a storyline in NERO.  Over the years, Mr. Valenti has secured intellectual property rights in various Ravenholt plotlines.  As just one example, Mr. Miles Richard Kanode transferred his copyright in his stories entitled Ravenholt:  Years 611 to 615 Evendarr Reckoning.  See **Exhibit M**.

### *The Ravenholt Chapter*

28.     Despite selling the NERO game to Mr. Valenti, Mr. Ivey continued his operation of the Massachusetts chapter, NERO Massachusetts (a/k/a NERO MASS, a/k/a RAVENHOLT a/k/a NERO RAVENHOLT) of NERO, pursuant to a license agreement from NIHC to Mr. Ivey.  With authorization from Mr. Valenti, Mr. Ivey continued running the RAVENHOLT chapter and ran events under the NERO MASS and RAVENHOLT names.  On or about July 1, 2000, Mr. Ivey sold the Ravenholt chapter to Rachel Morris, who incorporated her business entity as NEROtix Unlimited Inc.[2]

29.     Despite having bought the NEROtix business from Mr. Ivey, Ravenholt is part of the NERO game system.  Accordingly, Plaintiffs on the one hand, and NEROtix and Rachel Morris, on the other hand, entered into a contractual agreement declaring that all contracts, agreements, and understandings with Mr. Ivey and Nero Int'l are to be null and void.  See **Exhibit B**.

---

[2] However, NEROtix Unlimited, Inc. was incorporated on September 26, 2000.

30.     Furthermore, on August 19, 2000, NEROtix entered into a license agreement with NIHC. The license agreement granted NEROtix the limited use rights in the name NERO, NERO's other trademarks, NERO's copyrights, and the NERO game system.  See **Exhibit C**.

31.     Ms. Morris continued to operate NEROtix until 2009 when it was sold to Defendant Annemarie Tyler.[3]  By the time Ms. Tyler purchased NEROtix, the Ravenholt chapter was an integral part of the NERO world and had been operating for over 15 years under Mr. Valenti's control.

32.     All sales documents for NEROtix between Ms. Morris and Ms. Annemarie Tyler were executed by December 15, 2008 and the sale was effective as of January 1, 2009. As a result of the sale pursuant to the NEROtix Stock Purchase Agreement ("NSPA"), all rights, licenses, and contracts were transferred to Ms. Tyler, including the NERO license agreement between NIHC and NEROtix and the domain name NEROMASS.com.  See **Exhibit D.**

33.     The NSPA expressly stated that Ms. Morris does not "own, directly or indirectly, in whole or in party, any tangible or intangible property which [NEROtix] is using or the use of which is necessary for the business of [NEROtix]" (Section 5.5).  The NSPA also listed those assets for which it has marketable title (Section 5.7(b)).

34.     Nowhere in the NSPA is there any indication that Ms. Morris or NEROtix was the owner of the NERO and/or RAVENHOLT marks or any other NERO intellectual property.

35.     Instead, the NERO license agreement, originally executed by Rachel Morris, granted limited rights to use NIHC's trademarks, service marks, and logos within a certain geographical area.  Specifically, the western border was defined as a straight line from South to

---

[3] At the time of sale, Ms. Tyler was using the name Annemarie Boswell.

North beginning at the point at which I-91 meets the Massachusetts border and continuing directly North to the Vermont border; all other borders were defined by the borders of Massachusetts.

36.     The license agreement also granted a limited use license to Plaintiffs' copyrighted works.  In order for a licensee to reproduce any copyrighted item, the licensee must have procured written consent from licensor. See **Exhibit C** (Section 8).

37.     On October 21, 2015, Ms. Tyler filed pro se for a trademark application for the term RAVENHOLT for use with "entertainment, namely, production of live-action roleplaying games and interactive theatre productions".  The application was filed without the consent or knowledge of Mr. Valenti.  As part of the application, Ms. Tyler declared herself to be the owner of the trademark; that she was entitled to use the mark in commerce; and no other persons had the right to use the mark in commerce.  The application resulted in U.S. Trademark Reg. No. 4973167 issued on June 7, 2016.

38.     The license agreement between Ms. Tyler and NIHC was formally terminated on or about July 21, 2016 for Ms. Tyler's failure to comply with the terms of the license agreement. Ms. Tyler was delinquent on remitting payment for royalties over many years, and failed to remit any payments after a settlement agreement between the parties was reached.

39.     Subsequent to Ms. Tyler's termination, Plaintiffs licensed the Ravenholt chapter to interested parties.

40.     Eventually, Mr. Valenti himself took over the Ravenholt chapter, which he continues to operate to this day.

41.     Ravenholt, and the storyline associated with it, which has been progressing over three decades, is integral to the NERO game system.  Without the Duchy of Ravenholt, there would be gaps in plot and worldscape.

*Infringement, False Association and Breach by the Defendants*

42.     Despite the formal termination of the license agreement, Ms. Tyler, through NEROtix, continues to operate Ravenholt.  The continued operation of Ravenholt is part of a plot to form a separate NERO game system outside the control of Plaintiffs but utilizing Plaintiffs' intellectual property.  Accordingly, Defendants continue with their operation of Ravenholt by freely using Plaintiffs' various intellectual property.

43.     The most obvious example of Defendants' continued usurpation of Plaintiffs' intellectual property is the continued use of Plaintiffs' trademarks in various capacity.    The Ravenholt chapter is still called RAVENHOLT and NERO MASS despite no formal affiliation with Plaintiffs.  Furthermore, Defendants maintain the domain name NEROMASS.COM despite the fact that no authorization allows Defendants the continued use of the mark NERO.

44.     A visit to NEROMASS.com (**Exhibit L**) reveals that Defendants continue to host Plaintiffs' copyrighted works and allow member of the public to download and copy such works.  See **Exhibit E**, **Exhibit F**, and **Exhibit G**.  As another example, Defendants plagiarize passages from Plaintiffs' copyrighted works and publish them on their website.  See comparisons in **Exhibit H** and **Exhibit I**. Such continued display, copying, and use of Plaintiffs' intellectual property breaches the provisions of the license agreement and violates NIHC's exclusive rights in its intellectual property.

45.     According to the license agreement, if the license agreement is terminated, a former licensee is prohibited from engaging in any business whose principal activity is live roleplaying.  Furthermore, the licensee also agrees that it will not be employed by or have a financial interest in a live role-playing business.

46.     Termination of the license agreement also terminates any rights and use permitted pursuant to the license agreement.

47.     Upon information and belief, as of at least May 28, 2021, Ms. Tyler continues to use the marks RAVENHOLT and NERO on her website NEROMASS.com.  Furthermore, upon information and belief, Ms. Tyler continues to offer Plaintiffs' copyrighted works including the 9th Edition of the NERO Playbook, and Map of Evendarr.  All the works are available for download to the general public.

**COUNT I**

**TRADEMARK INFRINGEMENT
UNDER SECTION 32 OF THE LANHAM ACT**

48.     Plaintiffs repeat and re-allege each of the allegations in paragraphs 1 through 47 as if fully set forth herein.

49.     Defendants continue to (as of May 28, 2021) unlawfully use Plaintiffs' trademarks, namely RAVENHOLT and NERO.  Defendants are still operating the website NEROMASS.com, thereby incorporating Plaintiffs' NERO mark within the domain name.  Likewise, Defendants continue to operate and run the RAVENHOLT chapter.  See **Exhibit L.**

50.     Furthermore, Defendants' continue to generate revenue using Plaintiffs' NERO and RAVENHOLT trademarks.  As can be witnessed on NEROMASS.com, Defendants' charge for various "NERO" or "RAVENHOLT" events and solicit donations on the website.

51.     Defendants' actions are done intentionally and knowingly of the fact that Plaintiffs are the rightful owners of the marks RAVENHOLT and NERO.

52.     Defendants' actions are done intentionally and knowingly of the fact that Plaintiffs are the senior users of the marks RAVENHOLT and NERO.

53.     Defendants' unauthorized and unlawful use of the marks RAVENHOLT and NERO convey affiliation, endorsement, or sponsorship by NIHC and/or Mr. Valenti when in fact Defendants' rights in such marks have been expressly terminated.

54.     Defendants' aforesaid acts and conduct constitute trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

55.     Upon information and belief, Defendants' continued use of the NERO and RAVENHOLT marks are likely to cause confusion with Plaintiffs' rights in the identical marks.

56.     By reason of Defendants' aforesaid acts and conduct, NIHC has suffered, is suffering, and will continue to suffer irreparable damage, and unless Defendants are enjoined from continuing their wrongful acts, the damage to Plaintiffs will increase.

57.     Plaintiffs have no adequate remedy at law.

## COUNT II

### FALSE DESIGNATION OF ORIGIN
### UNDER SECTION 43(a) OF THE LANHAM ACT

58.     Plaintiffs repeat and re-allege each of the allegations in paragraphs 1 through 57 as if fully set forth herein.

59.     Upon information and belief, Defendants' continued use of the NERO and RAVENHOLT marks in connection with LARPing activity is likely to cause confusion with Plaintiffs' NERO and RAVENHOLT marks.

60.     Defendants aforesaid acts constitute false designation of origin and/or unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

61.     Defendants' aforesaid acts are likely to and will inevitably confuse, mislead, and deceive the public as to the source or origin of Defendants' LARP game and misappropriate the goodwill that Plaintiffs have expended time, labor, and money to achieve.

62.     Upon information and belief, the acts of Defendants complained of herein have been done willfully for the purpose of unfairly competing with Plaintiffs.

63.     By reason of Defendants' aforesaid acts, Plaintiffs have suffered, are suffering, and will continue to suffer irreparable damage, and unless Defendants are enjoined from continuing their wrongful acts, the damage to Plaintiffs will increase.

64.     Plaintiffs have no adequate remedy at law.


## COUNT III

### TRADEMARK DILUTION
### UNDER SECTION 43(c) OF THE LANHAM ACT

65.     Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 64 as if fully set forth herein.

66.     Plaintiffs' NERO and RAVENHOLT marks are famous trademarks.  These marks are known throughout the world and referenced in national media.

67.     By offering live action role playing games that are part of the NERO world, Defendants have caused and are likely to continue to cause dilution of Plaintiffs' famous trademarks by either (a) blurring, in that Defendants' actions have impaired and will continue to impair the distinctiveness of the famous NERO and/or RAVENHOLT marks; or (2) tarnishment, in that Defendants' actions have harmed and will continue to harm the reputation of the famous NERO and RAVENHOLT marks

68.     As a direct and proximate result of Defendants' actions, Plaintiffs have been and will continue to be irreparably damaged, and unless Defendants are enjoined by this Court from promoting and offering LARP games bearing Plaintiffs' NERO or RAVENHOLT mark, the damage to Plaintiffs will only increase.

69.     Plaintiffs have no adequate remedy at law.


<u>COUNT IV</u>

**FRAUDULENT PROCUREMENT AND MAINTENANCE OF RAVENHOLT MARK**

70.     Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 69 as if fully set forth herein.

71.     In her trademark application, Ms. Tyler declared under penalty of perjury that "no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such resemblance thereto as to be likely, when used or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive".

72.     At the time of her filing, Ms. Tyler clearly knew that the mark RAVENHOLT was in use and continuously being used by Plaintiffs and was associated with and known to be owned by Plaintiffs.  Ms. Tyler knew that RAVENHOLT was a realm in the NERO game system and that rights to the NERO game system and its intellectual property were granted by means of a license agreement.

73.     Ms. Tyler stated in the application for the mark RAVENHOLT that the first use in commerce was in 2009, even though she knew that Ravenholt was first used by Mr. Ivey in 1989 and that Plaintiffs purchased the NERO game system from Mr. Ivey in 1998.

14

74.     Ms. Tyler knew that the mark RAVENHOLT was already in use and owned by Plaintiffs when she took over NEROtix from Rachel Morris.

75.     Upon information and belief, Ms. Tyler knew or had reason to know that members of the general public, and in particular members of the LARPing community, would encounter the mark RAVENHOLT as used in connection with entertainment, namely, "production of live-action role playing games and interactive theatre productions" and assume affiliation, sponsorship, and/or endorsement from NIHC and/or Mr. Valenti and/or the NERO game system.

76.     Upon information and belief, Ms. Tyler misrepresented the nature of use in commerce of the mark RAVENHOLT, misrepresented her rights to the aforementioned mark, and continued to prosecute the trademark application leading to its registration.

77.     Upon information and belief, Ms. Tyler also committed fraud on the USPTO in filing maintenance documents in connection with the RAVENHOLT registration.   Upon information and belief, after this action had already been commenced, on December 8, 2021, Ms. Tyler caused to be filed with the USPTO a Declaration of Use under Section 8 of the federal Lanham Act ("Section 8 Declaration") in which she stated under oath that the RAVENHOLT mark was "in use in commerce on or in connection with the goods/services" listed in the RAVENHOLT registration (no. 4973167).  See **Exhibit N** hereto, at p. 6.

78.     Upon information and belief, Ms. Tyler also attested in the Section 8 Declaration that, to the best of her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made in the Section 8 Declaration have evidentiary support.

79.     Upon information and belief, Ms. Tyler has not made use of the RAVENHOLT mark in commerce for several years and had not made use of the mark at the time the Section 8

Declaration was filed.  Therefore, Ms. Tyler's statements in her Section 8 Declaration were false and/or fraudulent.

80.     On information and belief, the aforementioned false and/or fraudulent statements were with the intent to induce authorized agents of the USPTO to grant and maintain said registration, and, reasonably relying on the truth of said false and/or fraudulent statements, the USPTO did, in fact, grant said registration of the mark RAVENHOLT, and on May 24, 2022, the USPTO, reasonably relying on the truth of Ms. Tyler's false and/or fraudulent statements in her Section 8 Declaration, issued a Notice of Acceptance of the Section 8 Declaration.

81.     Upon information and belief, Ms. Tyler's false and/or fraudulent statements in her Section 8 Declaration were made with the intent to mislead authorized agents of the USPTO and allowed her to maintain the registration for the RAVENHOLT mark which she was not otherwise entitled to maintain.   The registration should therefore be cancelled in view of Ms. Tyler's fraudulent procurement and maintenance of the RAVENHOLT registration.

82.     RAVENHOLT has been, and continues to be, an integral part of NERO for over 29 years, with Plaintiffs spending countless hours and monetary funds to ensure NERO Chapter Owners and participants enjoy the realm of RAVENHOLT.

83.     As such, Plaintiffs believe that they were, are, and will continue to be damaged by Defendants' registration and maintenance of the mark RAVENHOLT and continued use of the aforementioned mark by the Defendants.

84.     In view of the above, Defendants are not entitled to U.S. Trademark Reg. No. 4973167 because Defendants, upon information and belief, committed fraud in the procurement and maintenance of the subject registration, and because Plaintiffs are and have previously used and not abandoned the same mark.

85.   Plaintiffs have no adequate remedy at law.

## COUNT V

### UNLAWFUL DOMAIN NAME REGISTRATION PURSUANT TO ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT

86.   Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 85 as if fully set forth herein.

87.   Defendants' license agreement with Plaintiffs terminated on July 21, 2016. Accordingly, Defendants lost any all rights to the NERO game system, including any limited use rights in the NERO trademark.

88.   Despite having no rights in the NERO mark and without Plaintiff' consent, Defendants maintain their registration of NEROMASS.com. In detail, Defendants fully control, operate, and create content on the website NEROMASS.com.

89.   Furthermore, Defendants continue to offer for download Plaintiffs' copyrighted works, in particular the NERO Play Book (9th Edition).

90.   The continued hosting of a LARP website that associates with Plaintiffs' NERO game system and Plaintiffs' Ravenholt realm despite no rights in the NERO game system clearly demonstrates Defendants' bad faith.

91.   Furthermore, Defendants' website states that the marks NERO and RAVENHOLT are registered, suggesting continued affiliation with the NERO game system.

92.   Players are likely to confused and associate NEROMASS.com with Defendants' NEORLARP.com and NERO game system.

93.     Defendants' control of the NEROMASS.com website allows them to continue making money off the website by soliciting donations and charging fees for events.

94.     Unless the Court orders the cancellation or transfer of NEROMASS.com to Plaintiffs, Defendants will continue to attempt to damage Plaintiffs' reputation through the use of the website and will continue to collect payment from LARP players who believe the game may be affiliated with NERO when this is not the case.

95.     Plaintiffs have no adequate remedy at law.

## COUNT VI

## COPYRIGHT INFRINGEMENT

96.     Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 95 as if fully set forth herein.

97.     Plaintiff Mr. Valenti owns a valid U.S. copyright registrations for the works at issue in this action.  Mr. Valenti registered the works with the U.S. Copyright Office pursuant to 17 U.S.C. §411(a).  Attached hereto as **Exhibit A, Exhibit I**, and **Exhibit J** are screen printouts of US copyright registrations.

98.     Defendants, without the consent of Plaintiff Valenti, copied, displayed, and distributed unauthorized copies the works at issue to the general public through the website NEROMASS.com in violation of 17 U.S.C. § 501.  Defendants' violation continues to this day. **See Exhibit E - G**.

99.     Defendants' copying, display, and distribution of unauthorized copies of the works is willful.

100.  By reason of the wrongful acts of Defendants alleged herein, Plaintiffs have suffered, are suffering, and will continue to suffer irreparable damage to themselves and their

business reputation, and unless Defendants are restrained from continuing their wrongful acts, the damage to Plaintiffs will increase.

101.   Plaintiffs have no adequate remedy at law.

## COUNT VII

### TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER MASSACHUSETTS COMMON LAW

102.   Plaintiffs repeats and re-alleges each and every allegation set forth in paragraphs 1 through 101 as if fully set forth herein.

103.   Defendants' acts alleged herein constitute infringement of Plaintiffs' rights in the RAVENHOLT and NERO mark and unfair competition under the common law of the State of Massachusetts.

104.   Upon information and belief, the acts of Defendants complained of herein have been done intentionally and willfully with intentional disregard of Plaintiffs' rights.

105.   By reason of the wrongful acts of Defendants herein, Plaintiffs have suffered, are suffering, and will continue to suffer irreparable damage, and unless Defendants are restrained from continuing their wrongful acts, the damage to Plaintiffs will increase.

106.   Plaintiffs have no adequate remedy at law.

## COUNT VIII

### BREACH OF CONTRACT

107.   Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 106 as if fully set forth herein.

108.   The license agreement between Ms. Tyler[4] and NIHC expressly contains anti-competition clauses.  Specifically, the licensee agrees that following the termination of the license agreement for any reason, licensee will not engage in a business whose principal activity is LARPing for two years from termination of the agreement.

109.   Despite the anti-competition prohibition, Ms. Tyler and NEROtix never ceased participating in the LARPing business.  The NEROMass chapter continues to operate (as of May 18, 2021) and host events using Plaintiff's intellectual property without the consent of Plaintiffs.  See **Exhibit E**.

110.   The operation of NEROMass chapter naturally utilizes NIHC's trade secrets, namely current and prospective players, member database, character database, trade materials and know-how of running a LARPing chapter.

111.   By reason of the wrongful acts of Defendants alleged herein, Plaintiffs have suffered, are suffering, and will continue to suffer irreparable damage to themselves, their business, and their reputation.  Unless Defendants are restrained from continuing their wrongful acts, the damage to Plaintiffs will increase.

112.   Plaintiffs have no adequate remedy at law.


## COUNT IX

### Violation of M.G.L. c. c. 93A

113.   Plaintiffs repeat and re-allege each and every allegation set forth in paragraph 1 through 112 as if fully set forth herein.

---

[4] The original licensing party was Ms. Morris.

114.   Defendants are engaged in the conduct of trade or commerce within the meaning of M.G.L. c. 93A.

115.   The above conduct by Defendants constitutes a pattern of unfair, deceptive, and fraudulent acts and practices within the meaning of M.G.L. c. 93A, §§ 2 and 11.

116.   Plaintiffs have been damaged and will continue to be damaged by Defendants' unlawful, unfair, fraudulent, and deceptive business practices as alleged herein.

117.   As a direct and proximate result of Defendant's conduct, Plaintiffs have been harmed and are entitled to damages against Defendants in an amount according to proof at trial, including double or treble damages, costs, and attorneys' fees, and to any and all other relief the Court deems just and proper under the law.

118.   Defendants' conduct was intentional, willful, wanted malicious, and in conscious disregard of Plaintiffs' rights, thereby justifying an award of three times Plaintiffs' damages, together reasonable attorneys' fees, pursuant to M.G.L. c. 93A, §§ 2 and 11.

**WHEREFORE**, Plaintiffs demand judgment that:

A.      Defendant NEROtix, its officers, agents, servants, employees, parents, subsidiaries, and all related companies, Defendant Ms. Tyler, and all persons acting for, with, by, through or under each of them, be preliminarily and permanently enjoined and restrained from interfering with Plaintiffs' rights in the RAVENHOLT and NERO trademarks, or any colorable imitations of either, in connection with the promotion, offering, and rendering of live action role-playing games;

B.      Defendants be ordered to cease using the marks RAVENHOLT and NERO, or any colorable imitations of any of them in connection with the promotion, offering, and rendering of live action role-playing games;

21

C.      Defendants, within thirty (30) days after the entry of a final judgment in this action, be required to file with the Court and serve upon Plaintiffs a written report under oath setting forth in detail the manner in which Defendants have complied with the foregoing paragraphs;

D.      Defendant NEROtix, its officers, agents, servants, employees, parents, subsidiaries, and all related companies, Defendant Ms. Tyler, and all persons acting for, with, by, through or under each of them, be preliminarily and permanently enjoined and restrained from committing the acts alleged herein in violation of 17 U.S.C. § 501;

E.      Defendant NEROtix, its officers, agents, servants, employees, parents, subsidiaries, and all related companies, Defendant Ms. Tyler, and all persons acting for, with, by, through or under each of them be compelled to cancel the domain name registration NEROMASS.com or in the alternative transfer the domain name to Plaintiffs;

F.      Defendants be required to pay Plaintiffs for their actual damages and profits attributable to copyright infringement, or at Plaintiffs' election, statutory damages, as provided in 17 U.S.C. § 504;

G.      Defendants be required to pay Plaintiffs for their actual damages and profits attributable to trademark infringement under 15 U.S.C. § 1117;

H.      Defendants account for and pay over to Plaintiffs the profits realized by Defendants' by reason of Defendants' unlawful acts herein alleged and, that the amount of damages be increased by a sum not exceeding three times the amount thereof as provided by law because Defendants acted knowingly and in bad faith;

I.      Defendants be required to pay punitive damages for their knowing and intentional infringement and unfair competition in wanton disregard of Plaintiffs' rights;

J.      Defendants be required to account for and pay over to Plaintiffs all damages sustained by them by reason of Defendants' unlawful acts alleged herein, and that such amounts be trebled, as provided by law;

K.      Defendants be required to pay to Plaintiffs all of their costs, disbursements, and attorneys' fees incurred in this action, as provided by law, including but not limited to, 15 U.S.C. § 1117 and 17 U.S.C. § 505; and

L.      Plaintiffs be awarded any other relief that the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated: June 9, 2022                                  Respectfully submitted,

                                                    ELLENOFF GROSSMAN & SCHOLE LLP

                                                    By:   /s/Atul R. Singh
                                                         Atul R. Singh
                                                         Honeah Sohail Mangione
                                                         1345 Avenue of the Americas, 11th Floor
                                                         New York, NY 10105-0302
                                                         Tel: (212) 370-1300
                                                         Fax: (212) 370-7889
                                                         Email: asingh@egsllp.com
                                                                hmangione@egsllp.com

                                                         and

                                                    By:  /s/ Douglas F. Hartman
                                                         Douglas F. Hartman, BBO# 642823
                                                         HARTMAN LAW, P.C.
                                                         10 Post Office Square
                                                         Suite 800 South
                                                         Boston, Massachusetts 02109
                                                         P:  617-807-0091
                                                         F:  617-507-8334

Email: dhartman@hartmanlawpc.com

*Attorneys for Plaintiffs*
NERO International Holding Co. and
Mr. Joseph Valenti

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and complete copy of the foregoing document was electronically filed on the below date through the Court's CM/ECF system and that a copy of the document will be sent electronically to the registered participants and counsel of record as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants, if any, on the same date below.

Date: June 9, 2022                     By: ____/s/ *Atul R. Singh*_____